HEEKIN CAN COMPANY v. PORTER ET AL.

[No. 27,746. Filed February 8, 1943.]

70

*Walter B. Keaton,* of Rushville, *Philip Zoercher,* and *Lutz, Johnson & Lutz,* all of Indianapolis, for appellant.

*Chauncey W. Duncan,* of Rushville, for appellees.

SWAIM, J.—The appellant filed an action against the assessor, auditor, treasurer and the board of county commissioners of Rush County, Indiana, to quiet the title to certain real estate against which the said officials were claiming a lien for delinquent taxes on personal property. The appellee officers by answer asserted that the said lien was a valid and subsisting lien against said real estate for taxes duly assessed against a former

owner for the years 1937, 1938 and 1939. The trial was to the court without the intervention of a jury.

From a judgment against the appellant, it appealed, assigning as error the overruling of its motion for a new trial. The reasons stated for a new trial were that the verdict was not sustained by sufficient evidence and was contrary to law.

The appellees contend that the trial court properly overruled the motion for a new trial since it assigned no statutory ground therefor and, therefore, presented no question.

The sixth statutory ground for a new trial is "That the verdict or decision is not sustained by sufficient evidence, or is contrary to law." § 2-2401, Burns' 1933, § 368, Baldwin's 1934. This court has held that "decision" as used in this statute means the finding of the court upon the facts where the cause is tried by the court. *Smith et al.* v. *Hill* (1929), 200 Ind. 616, 165 N. E. 911; *Wolverton* v. *Wolverton* (1904), 163 Ind. 26, 71 N. E. 123.

In *Gates* v. *Baltimore etc. Ry. Co.* (1900), 154 Ind. 338, 342, 343, 56 N. E. 722, it was held that an assignment "that the decision of the court is not sustained by sufficient evidence, and is contrary to law" presented no question as to the sufficiency of the evidence to support a special verdict rendered by the jury. The court there said: "The word 'decision' as employed by the section of the code above cited, means the finding of the court upon the facts where the cause is tried by the court, and has no application where the trial is by jury (citing cases)."

In *Mathews* v. *Highlands, Exr.* (1937), 103 Ind. App. 265, 269, 270, 7 N. E. (2d) 72, it was held that the words "verdict" and "decision" could not be considered synonymous or interchangeable; that "the word 'ver-

dict' could not be substituted for the word 'decision' in assigning the statutory causes in a motion for a new trial when the cause is tried before the court without the intervention of a jury"; and that in such a case where the word "verdict" was used the motion for a new trial did not challenge the court's decision.

We recognize the fact that in legal terminology "verdict" and "decision" have come to have very definite meanings, the first, the finding of the jury, and the second, the finding of the court. Each, however, denotes the finding on the facts.

The requirement that the motion for a new trial specify the grounds therefor is for the purpose of pointing out to the trial court and the other party the error complained of. The written reasons for a new trial are sufficient if they, with reasonable certainty, apprise the court and the opposite party of the ground upon which the new trial is asked. The reason need not be stated in the language of the statute. *Humphries* v. *The Administrators of Marshall* (1859), 12 Ind. 609.

In the instant case it would seem that both the court and the other party must have known that the appellant was asserting that he should be granted a new trial because the decision was not supported by sufficient evidence and was contrary to law. Both knew that the trial was by the court. Both necessarily knew that appellant was complaining of the finding not being supported by sufficient evidence and being contrary to law. The fact that appellant to designate the finding inadvertently used the word "verdict" instead of "decision" could not have misled either the court or the other party. To hold that such an inadvertence prevents a consideration of this case on the merits would impede, rather than promote, the ends of justice.

In so far as *Gates* v. *Baltimore etc. Ry. Co., supra,* is in conflict with this opinion it is overruled and the holding on this question in *Mathews* v. *Highlands, Exr., supra,* is disapproved.

The appellees also contend that this court cannot consider this appeal on its merits because the bill of exceptions containing the evidence is not in the record; that it is not shown by the order book entry or by the certificate of the clerk that the bill of exceptions was filed with the clerk or in open court after it was signed by the trial judge. The statute, § 2-3111, Burns' 1933, § 456, Baldwin's 1934, provides that it shall appear from the record that such bill was presented to the judge for settlement and signature within the proper time; and that the same was signed by the judge and filed with the clerk of the trial court or in open court. In the instant case the record shows an order book entry, made within time, which recites that within the time fixed and allowed the plaintiff presented and tendered the bill of exceptions to the court; that the court allowed and signed the bill of exceptions and ordered it made a part of the record and proceedings of the cause, and further ordered the clerk to file the same as part of the record and proceedings in the cause. In the transcript this order book entry is followed by the bill of exceptions and attached thereto is a copy of the said entry signed by the judge. The certificate of the clerk to the transcript recites that he certified "that the above and foregoing transcript contained full, true and correct copies or the originals of all papers and entries, including a bill of exceptions numbered one, containing all agreed stipulations and facts and all evidence given in the cause . . . as the same remains of record and on file in my office. . . ." The bill of exceptions and entry signed by the judge

could not have then been on file in the clerk's office unless it had been filed there. This transcript, by the order book entry and by the final certificate of the clerk to the transcript, sufficiently shows a filing of the bill of exceptions in compliance with the statute. *Morthland* v. *Lincoln National Life Insurance Company* (1943), 220 Ind. 692, 42 N. E. (2d) 41, 46 N. E. (2d) 230; *Keeshin* v. *Glassman* (1942), 219 Ind. 538, 38 N. E. (2d) 847, and *Lencioni* v. *Folk* (1941), 109 Ind. App. 519, 36 N. E. (2d) 980.

On March 8, 1940, the appellant acquired from one Grover C. Hutcherson the title to the real estate against which the appellees, as the taxing officials of Rush County, Indiana, are asserting a lien for delinquent taxes, assessed in the years 1937, 1938 and 1939, on certain personal property then located in Rush County and owned by said Hutcherson. During all of the time here involved, up to March 8, 1940, said Hutcherson was the owner both of said real estate and said personal property. The personal property at all times had a value in excess of the total amount claimed by the appellees for the delinquent taxes, interest, penalties and costs. At the time of the trial of this cause the said Hutcherson was a bankrupt and his estate was being administered in the United States District Court for the Southern District of Indiana. There were certain assets in the hands of the trustee in bankruptcy but the appellees failed to file any claim against said estate for said delinquent taxes within the time for filing claims.

The appellant contends that the appellees, as the taxing officials of Rush County, had failed to take certain required statutory steps to make the delinquent personal property taxes a lien on said real estate and that § 2 of ch. 224 of the Acts of 1941, p. 716, relieved the

real estate from any lien for the delinquent personal property taxes which might have been acquired. The appellees seem to concede that if the act is valid and is applicable to liens acquired prior to the effective date of the 1941 Act, *supra,* its language is sufficient to remove such a lien from the real estate. Section 2 of said Act, which has to do with delinquent tax sales of real estate, provides that no real estate shall be sold for any delinquent installment of taxes until fifteen months shall have elapsed after such installment shall have become delinquent. It further provides that *"hereafter* it shall not be necessary for the purposes of such sale for the county treasurer to levy upon personal property or to attempt to collect such real estate taxes out of the personal property of the owner *nor shall any personal propery tax delinquency be included in the sale of real estate for delinquent taxes."* (Our italics.)

In 1935 the legislature apparently adopted a legislative policy of not having any tract or parcel of real estate chargeable with taxes assessed against any other property. Section 1, ch. 262, Acts of 1935, p. 1292, provides in reference to the sale of real estate for delinquent taxes, "That in no event shall any liability for delinquent taxes on any tract or lot be chargeable to or be a lien against any other tract or lot belonging to the same owner." The provisions above quoted from section 2 of the 1941 Act seems to be a further step taken pursuant to this same legislative policy.

Section 5 of the 1941 Act, *supra,* gives a reason behind this policy by stating: "That as many thousand parcels of real estate upon which taxes are delinquent and upon which no taxes whatever are being paid and which are now greatly needed to meet a housing shortage, exist in this state, this act shall be given a liberal interpretation and application to the end that good titles to said

parcels of real estate may be speedily acquired, that the same may be brought into useful ownership, and may bear their just share of the burdens of government."

In *Voigt, Admr.* v. *Ludlow Typograph Co.* (1938), 213 Ind. 329, 12 N. E. (2d) 499, this court held that taxes on personal property were the personal ██ obligation of the taxpayer and became a lien on the personal property only when such property was levied upon. The delinquent personal property taxes here in question were the personal obligation of the owner of the property against which they were assessed. If they were a lien on the real estate which he then owned, the lien was created only under the provisions of former statutes. A lien so acquired was only a statutory lien. While the personal obligation to pay could be enforced against the owner by an action at law, the statutory lien could be enforced only by the method provided by statute—a sale of the real estate pursuant to the statutory provisions. By taking away the right to sell real estate to pay delinquent personal property taxes, the only statutory method provided for enforcing the lien, we must assume that the Legislature intended to remove such liens from the real estate. By saying that "hereafter" no personal property tax delinquency should be included in the sale of the real estate for delinquent taxes, the Legislature clearly intended to remove the lien of such taxes from real estate in all cases where the sale had not then been held. Statutes may be interpreted as having a retroactive effect where the intention of the Legislature is clear.

If this lien had accrued, as contended by the appellees, the county still did not thereby acquire such a vested right that it could not be taken away by a subse-██ quent legislature without violating any provision of the constitution. *County Department of Pub-*

*lic Welfare* v. *Potthoff* (1942), 220 Ind. 574, 44 N. E. (2d) 494.

The judgment is reversed with instructions to the trial court to grant the motion for a new trial and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 46 N. E. (2d) 486.