IN RE D. L. F————

(176 N.W.2d 486)

(File No. 10683. Opinion filed April 16, 1970)

Rehearing denied May 5, 1970

**David O. Rude,** Rapid City, for appellant.

**James R. Becker of May, Boe & Johnson,** Sioux Falls, for respondent Home, Lutheran Social Services of South Dakota.

BIEGELMEIER, Judge.

On June 5, 1968 appellant, an unmarried girl of 15 years who lived in Rapid City, entered respondent's Home for un-wed mothers located in Sioux Falls, South Dakota. She reached age 16 on June 21st and on July 4th gave birth to a son, the central figure of this controversy. Appellant was re-leased from the hospital, where the birth took place, on the afternoon of July 9th at which time her mother had arrived. On the next morning July 10th, pursuant to an appointment made by a Home employee and social worker, appellant and her mother, who had paid the hospital and the Home's bills, appeared with her before the judge of the county court where the social worker signed a Petition, the appellant a Waiver and Consent, and the court an Order Surrendering Child. They will be described more in detail later.

Appellant returned to her home and after some dis-cussion and thought on July 22, 1968 made a trip back to the Home with the father of the baby, told the social worker they were to be married and that she wanted her baby given to her. The request was denied; she was advised to consult a lawyer which she did. On August 15th appellant and her mother as guardian ad litem executed and filed petitions ask-ing leave to withdraw the waiver and consent and restore the custody of the baby to her. The county court denied re-lief and on appeal the circuit court affirmed. By Ch. 164, 1968 Session Laws the legislature made comprehensive

changes and additions to the laws relating to dependent, neglected and delinquent children, now in SDCL 26-8.[1] Failure of the county court to comply with several provisions of that chapter is urged as grounds for reversal. Those deemed important will be examined.

The "Petition"[2] in this proceeding was a printed form, signed and sworn to by a social worker employee of the Home; it alleged the baby, D.F.L——— by name, was a dependent child "as defined by SDC 43.0301"; prayed it be and remain a ward of the court and its legal custody be awarded to the Home and its Director or successor in office, and that upon the hearing the Home be authorized to consent to legal adoption of the child. On the second sheet of this form was a printed waiver and consent signed by appellant requesting the child be declared dependent, the petition heard forthwith, consented the Home be authorized to assent to a legal adoption and to the entry of the adoption decree; it was subscribed to by appellant and "approved" by her mother. They were dated July 10, 1968. This Petition, with the waiver and consent attached, was the only written record filed in, or of record before, the county court at that time. The court entered an order in effect granting the Petition[3] as requested. The order was on a mimeographed form with blanks filled in with appropriate dates and the child's name. The Petition listed the father as "unknown". The father's name and address had been given to the social worker prior to the time she signed the Petition. He visited

1. The proceedings in the county and circuit courts were while the 1939 Code and later Session Laws were in effect. Hereafter, they will be referred to with the present official code sections in SDCL added for clarity.

2. Authorized by SDC 43.0305, Ch. 164, § 5, S.L.1968, now SDCL 26-8-10. The record does not show the court made a preliminary investigation, SDC 43.0304, as so amended, now SDCL 26-8-1.1.

3. There is doubt the Petition stated facts that the child was dependent under SDC 43.0301 as amended by Ch. 164, § 1, S.L. 1968, now SDCL 26-8-6, which defines a dependent child as one "who is homeless"; the Petition stated the child had no "suitable home".

appellant at the hospital, accompanied her on the July 22, 1968 trip to the Home to reclaim the child, married appellant September 3, 1968, and testified at the hearing. The social worker said his name was listed as unknown because he had not come in to sign any papers saying he was the father, had not made payment of the bill, and there was nothing written as evidence.

■ SDC 43.0301(1), as added by Ch. 164, § 1, S.L.1968, now SDCL 26-8-1(1), under Definitions provides:

"(1) 'Adjudicatory hearing' means a hearing or trial to determine whether the allegations of a petition alleging that a child is dependent * * * are supported by preponderance of the evidence."

As the Petition made this claim it required such a hearing. SDC 43.0327 as amended by Ch. 164, § 16, S.L.1968, now SDCL 26-8-32.4, provides:

"A verbatim record shall be taken of all adjudicatory hearings."

A verbatim record means the taking of the record word for word; all dictionaries so define it. While this clause of the statute is plain and mandatory on the court, it follows the plan of the 1968 revision. For example, SDC 43.0327 titled Procedure formerly provided: "All hearings under the provisions of this chapter shall be **informal** in their nature * * *." This was changed by creating two kinds of hearings:—the "Adjudicatory hearing" above and a "Dispositional hearing"[4] and by amending SDC 43.0327[5] to read "All **adjudicatory** hearings * * * shall be conducted in accordance with the applicable law and rules of civil procedure, and all **other** hearings" by a different procedure (emphasis supplied).

---

4. SDC 43.0301(1), (11), as added by Ch. 164, § 1, S.L.1968, now 26-8-1 (1), (8).

5. Now SDCL 26-8-30.

■ It is clear the legislature was abandoning informal hearings and installing a formal court hearing[6] in accord with law; that means in accord with other statutes including the requirement of a verbatim record. As it is undisputed no word for word record was taken of this hearing, the court should not have nor was it authorized to enter the Order Surrendering Child. The legislature determined the necessity and requirement of a formal hearing and verbatim record, and this appeal shows the wisdom of both. Ch. 164, § 7, S.L.1968, in amending SDC 43.0309 also added a clause:

> "At his first appearance before the court, the child, his parents, guardian, or other custodian shall be fully informed of their constitutional rights and legal rights, including the right to be represented by counsel at every stage of the proceedings."[7]

Failure to make the verbatim record of necessity resulted in taking the evidence from a Home social worker of what occurred at the meeting with the county judge, yet it must be said it was general and indefinite and such as not to impress the formality of a court trial on appellant. The social worker testified appellant and her mother came to the Home on July 10th, the next morning after appellant was discharged from the hospital, where "We read through the petition, waiver and consent. I read it outloud * * * So we came down to the courthouse, County Court, and we had the usual court proceedings with (the county judge)". Appellant and her mother did not remember being informed of their rights. The social worker did not recall the judge had advised appellant of her right to an attorney which information, as also the other rights set out in the clause above, is a duty cast on the judge by the amendment and not on an adversely interested person as petitioner. The legislative concern that persons appearing before the court in this class of proceedings be advised of their right to counsel is not only evidenced

---

6. Whether the legislature concluded due process required formality and a record in the county or juvenile court is immaterial, it did pass legislation to that effect.

7. Now SDCL 26-8-22.1.

by being specifically set out in the quoted statute, it also required that to be set forth in the summons where termination of parental rights is a possible remedy.[8]

Another clause was added to SDC 43.0309 by Ch. 164, § 7, now SDCL 26-8-22.3, as follows:

"If the child and his parents, guardian, or other custodian were not represented by counsel, the court shall inform them at the conclusion of the proceedings that they have the right to file a motion for a new trial, and that if such motion is denied they have the right to appeal."

Appellant was not so informed. Had that statute been complied with and had she known those rights when she returned to the Home, the city and county seat of the county court and requested return of the child to her on July 22, 1968, it was well within the time to move for a new trial or appeal from the county court order.[9] On appeal the trial would be de novo.[10]

■ The law[11] further provided that when, at an adjudicatory hearing, the court finds the allegations of the Petition are supported by the evidence, the court shall make an "order of adjudication" and "(a)fter making an order of adjudication" the court "shall then hold the dispositional hearing" and "hear evidence on the question of the proper disposition". The entry of the "decree of disposition" was covered by another section.[12] The record shows this procedure was not followed. From the foregoing and without further examination of the proceedings, we conclude the non-

8. SDC 43.0306 as added by Ch. 164, § 6, S.L.1968, now SDCL 26-8-13.1.

9. SDC 43.0309 as added by Ch. 164, § 7, S.L.1968, now SDCL 26-8-22.3, and SDC 43.0333, now SDCL 26-8-58.

10. SDC 35.2111, as amended, now SDCL 30-35-19.

11. SDC 43.0327, as amended by Ch. 164, § 16, S.L.1968, now SDCL 26-8-22.5 through 26-8-22.11.

12. SDC 43.0310, as amended by Ch. 164, § 8, S.L.1968, now SDCL 26-8-35.

compliance with the cited statutes denied appellant's fundamental rights which were timely brought to the county court's attention.

The court has not overlooked respondent's contention that appellant has made arguments here not based on claims in the trial court. Appellant's challenge of the authority of the county court to enter its order raised for review all the aforementioned defects in the record. Nor may respondent Home bar appellant's claim as it must rely on the court record made at the instance of its employee and it had received notice of appellant's decision to withdraw her consent and reclaim her child 12 days after it was signed.[13] The county court should have vacated and set aside its order.

We believe it should be pointed out, as is apparent, the order involved was entered just 10 days after Ch. 164, S. L. 1968 became effective on July 1, 1968. The testimony showed "we had the usual court proceedings" followed in prior cases. Chapter 164 provided new, detailed and different proceedings with which some were not familiar. It was well known many persons including county judges were uncertain of the power to employ reporters to take a "verbatim record" of the proceedings and how to otherwise comply with the new procedure. That cannot be permitted to prejudice appellant in this appeal. In this connection it may be well to call the attention of the Bar to a sentence of SDCL 26-8-58 which directs "Initials shall appear on the record on appeal in place of the name of the child." Our opinion follows that guide though counsel have not done so.

The order vacated, the effect of the consent addressed to the Home to assent to a legal adoption remains. On that we turn to In re Romero, 73 S.D. 564, 46 N.W.2d 108, where it was undisputed the mother's "decision to surrender the child to the Society for placement and adoption was uninfluenced and voluntary". The court wrote:

---

13. While no intimation is made that the 60-day limitation to return custody to appellant would apply to the deficiencies here present, her petition was filed before that time expired. See SDC 43.0317, as amended by Ch. 222, S.L. 1951, now SDCL 26-8-54.

"we are not troubled by the fact that this mother signed a consent to the adoption of her child. In the circumstances at bar, we deem it enough that she changed her mind. We are unfamiliar with any principle of jurisprudence which would render such a naked consent binding on a parent. * * * Whether in other circumstances she should be held to be estopped to withdraw her consent, we need not determine. It is not contended here that the evidence is sufficient to raise such an estoppel."

Neither is that evidence here present, and we conclude this appeal is governed by Romero. The record there showed the waiver and consent to the same Home was signed by a 19-year-old mother five days after the birth, and the petition to vacate the order 54 days later; it was granted ex parte by the county court and affirmed by the circuit court and this court. It may be said those decisions to vacate and affirmances were based on the merits of the mother's claim. Here the county court order is vacated and of no force by reason of failure to comply with statutes cited.

It becomes therefore unnecessary to weigh what was written and upheld in Ex Parte Summers, 43 S.D. 617, 181 N.W. 831, that the rights of a natural parent are not to be set aside except for strong and compelling reasons with that written in In re Magee, 74 S.D. 286, 52 N.W.2d 99, where the court discussed problems in adoption cases in an appeal involving a 20-year-old mother whose petition to withdraw her consent and to restore the child to her was filed nearly nine months after she signed the consent, over six months after the child had been in an adoptive home and after a petition to adopt the child had been filed by its adoptive parents.

■ This proceeding reverts to the waiver and consent which, following Romero, the court holds the mother may and did disaffirm and withdraw. There was some evidence the Home usually kept a child for 30 days before placing it with proposed adoptive parents; that here, after receiving a phone call from appellant's mother asking for pictures of the child and suggesting they place it with adoptive parents at

an early date, they did so place it on Thursday or Friday, July 18th or 19th. This did not bind appellant and her request for a return of the child within three or four days thereafter on Monday, July 22nd was prompt; she lost none of her rights and no estoppel prevents her assertion of them. The evidence of appellant mother, her husband, and both of their mothers, supported by the husband's employer, was to the effect the parents could properly provide and care for the child; the evidence of the petitioning social worker on behalf of the Home was to the effect under the situation as it appeared at the hearing she would not have attempted to make any claim to the contrary to bring on a hearing to declare the child dependent.

Both the county and circuit courts gave prompt disposition of this proceeding and by reason of the issue involved this opinion was written shortly after the oral argument prior to its usual order. More than the normal time for the appeal to be heard occurred by reason of delay in settling the record.

The judgment appealed from is reversed with directions to enter a judgment vacating and setting aside the county court Order Surrendering Child dated July 10, 1968.

RENTTO, HANSON, and HOMEYER, JJ., concur.

ROBERTS, P. J., not participating.